**STATE of Tennessee, Petitioner,**

v.

**Keith CAMPBELL, Alias Batman, Respondent.**

Supreme Court of Tennessee.

April 25, 1977.

David L. Raybin, Asst. Atty. Gen., Nashville, for petitioner; R. A. Ashley, Jr., Atty. Gen., Nashville, of counsel.

Joe W. Henry, Jr., Henry & Henry, Pulaski, for respondent.

## OPINION

BROCK, Judge.

The defendant, Keith Campbell, was convicted in the Circuit Court of Giles County of selling amphetamines, a Schedule II controlled substance, and ethchlorvynol, a Schedule IV controlled substance. See T.C.A. § 52–1432 and subsections 52–1432(a)(1)(B) and (D). The defendant was sentenced to not less than four nor more than five years in the penitentiary and fined $5,000 for selling the amphetamines and to not less than two nor more than three years in the penitentiary and fined $2,000 for selling ethchlorvynol. The penitentiary sentences were ordered to be served concurrently. The Court of Criminal Appeals reversed the judgment of the trial court in each case. The State petitioned this Court for review by certiorari alleging that the appellate court erred in two respects.

An undercover agent of the Tennessee Bureau of Investigation, Carpenter, was the only witness for the State. He testified that he was with an unnamed "confidential informant" at the Pioneer Club in Pulaski when the defendant arrived and joined them in a booth. Carpenter testified that his unnamed companion asked the defendant if he had "anything for the head," that a conversation relative to a drug purchase ensued, and that the defendant left with the understanding that he would return shortly. After waiting for some time, Carpenter and his companion left the club and drove around until they spotted the defend-

ant in his car and hailed him. The three then went to a private residence where Carpenter paid a total of thirty dollars ($30.00) for twenty capsules, twenty dollars ($20.00) for one substance and ten dollars ($10.00) for the other. Laboratory analysis proved that ten capsules were a Schedule II amphetamine and that the other ten were ethchlorvynol, a Schedule IV controlled substance.

The defendant testified at trial and completely denied the transaction.

I

■ The evidence of the State, therefore, reflected that three people actively participated in the drug transaction. The State refused to disclose the name of the "confidential informant," insisting that the informant participated only in the preliminary stage of the transaction and, thus, was not actually a participant in the sale itself. The trial court agreed. Upon the authority of *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) and *Roberts v. State,* 489 S.W.2d 263 (Tenn.Cr.App. 1972), the Court of Criminal Appeals reversed the convictions holding that, under the circumstances, the State did not have a "confidential witness" but, rather, a third participant in the sale and, thus, had wrongfully withheld his identity, despite the defendant's timely motions seeking that identity. We concur in this holding of the Court of Criminal Appeals.

Nevertheless, we granted certiorari to consider another question that may arise upon the new trial; viz., whether the sale of two separately classified controlled substances under the circumstances and in the manner here shown constitutes two separate and distinct offenses that permit separate convictions and separate sentences, or only a single offense. The Court of Criminal Appeals observed that if two convictions resulted upon retrial, only the conviction of the "greater offense" should be permitted to stand because there was but one sale of mixed controlled substances, relying upon *Wells v. State,* 509 S.W.2d 520 (Tenn.

Cr.App.1973), which was subsequently affirmed by this Court in *Wells v. State,* 517 S.W.2d 755 (Tenn.1974). In *Wells* this Court held that possession at one time of different classes of controlled substances, when not acquired by separate acts, is but a single possession and,· therefore, should result in only a single conviction and punishment.

However, the continued validity of the *Wells* decision was drawn into question by our subsequent decision in *State v. Black,* 524 S.W.2d 913 (Tenn.1975), wherein we rejected the "same transaction" test for determining identity of offenses. See also *State v. Briggs,* 533 S.W.2d 290 (Tenn.1976). In *State v. Black, supra,* the defendant was convicted of robbery by use of a deadly weapon and of assault with intent to commit murder. After robbing the victim, the defendant stepped back and shot him in the leg. The Court of Criminal Appeals, relying on the "same transaction" rule of *Acres v. State,* 484 S.W.2d 534 (Tenn.1972), held that the two offenses were susceptible of only one punishment and that conviction of one was a bar to conviction of the other. This Court reversed, rejecting the "same transaction" rule. We declined, however, in *Black,* "to attempt to formulate a rule to fit all possible situations," not finding the "formulation of the various 'tests' into catch words, such as 'same transaction' or 'same evidence' . . . particularly helpful." Rather, we held that:

> "The cases, from their nature, have to be dealt with by analysis of the particular situations as they arise.
>
> \*  \*  \*  \*  \*  \*
>
> "Each case requires close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances." 524 S.W.2d at 914, 919.

In the course of our analysis of the armed robbery-aggravated assault situation presented by *Black,* we quoted with approval the test for determining the identity of offenses articulated in *Blockburger v. Unit-*

ed States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

"Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182.

We noted that, although the armed robbery-aggravated assault in question occurred at substantially the same time and in the course of a single "criminal episode," or "transaction," under the *Blockburger* test—as well as under the principles announced by this Court in *Duchac v. State,* 505 S.W.2d 237 (Tenn.1973)—the offenses were not "identical" and, therefore, that they were punishable by separate sentences.

Because of the nature of the offenses presented by *Black, supra,* we were able to determine, without further inquiry, that the armed robbery and aggravated assault were two separate and distinct offenses. Crimes at common law and long a part of our statutory law, robbery and assault, even when committed in the course of a "single transaction," do not present the questions of legislative intent which are here presented by the sale of controlled substances.

We now consider the element of legislative intent here presented. In 1971, our legislature passed a model act, the "Tennessee Drug Control Act," now T.C.A. §§ 52–1408—52–1448, "to provide for a comprehensive system of drug and drug abuse control for Tennessee . . . ." Public Acts of 1971, ch. 163. The Drug Control Act established a classification of controlled substances into different "schedules," based upon the relative potential of each substance for abuse, the degree of physical or psychological dependence its use might engender, and its acceptability for medical use in treatment. T.C.A. §§ 52–1412, 52–1414, 52–1416, 52–1418, 52–1420.

A "controlled substance" is defined by the Drug Control Act as "a drug, substance, or immediate precursor" of such drug or substance included in the schedules established by the Drug Control Act. T.C.A. § 52–1409(d). Except as specifically authorized by the Act, the manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell a controlled substance is made unlawful by T.C.A. § 52–1432. Subsections of § 52–1432 set out varying penalties, corresponding with the stratified schedules of §§ 52–1413—52–1422, for violations of the general prohibitory statute. The Act does not expressly state whether or not the penalty subsections are intended to be additive when different scheduled substances are involved in a sales transaction or other act prohibited by T.C.A. § 52–1432.

■ Applying the analytical approach we adopted in *Black, supra,* we note that, although the sale of mixed controlled substances in the present case was committed in a single sales transaction, between the same principals at the same time and place, the sale may be sectored by acknowledging that two different schedule substances were sold, each of which has been, by statute, separately classified and penalized by separate subsections of the general prohibitory statute. See T.C.A. §§ 52–1415 and 52–1419; §§ 52–1432(a)(1)(B) and 52–1432(a)(1)(D). Thus, under the *Blockburger* test, we hold that two distinct offenses were committed since the sale of each controlled substance "requires proof of an additional fact which the other does not," viz., the particular "schedule" identity of the controlled substance sold. The Court of Criminal Appeals erred in holding to the contrary.

A similar problem was posed in *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). There the United States Supreme Court reaffirmed its decision in *Blockburger, supra,* observing that the three separate federal statutes violated by the two separate drug sales in question had "different origins both in time and in design," indicating "the determination of Congress to turn the screw of the criminal machinery . . . tighter and tighter."

To the defendant's urging that the Court reconsider *Blockburger* by reading the various specific enactments of Congress as "reflecting a unitary congressional purpose to outlaw nonmedicinal sales of narcotics," the Court responded:

> "It seems more daring than convincing to suggest that three different enactments, each relating to a separate way of closing in on illicit distribution of narcotics, passed at three different periods, for each of which a separate punishment was declared by Congress, somehow or other ought to have carried with them an implied indication by Congress that if all three different restrictions were disregarded but, forsooth, in the course of one transaction, the defendant should be treated as though he committed only one of these offenses." 357 U.S. at 390–91, 78 S.Ct. at 1283.

▇▇ Considering the statutory scheme and legislative history of the Tennessee Drug Control Act, we are convinced that our legislature intended that a sale of two or more controlled substances, classified separately in the schedules of the Act, should constitute separate and distinct offenses.

We have examined decisions from other jurisdictions concerning the allowable unit in the prosecution of narcotics cases. In our opinion, these decisions—whether for the transportation, distribution, possession, or sale of controlled substances—present no discernible pattern. Consequently, nothing would be gained by discussing them here.

*Wells v. State, supra,* should no longer be considered authority in light of this opinion and our opinion in *State v. Black, supra.*

The judgments of the Court of Criminal Appeals are affirmed and the cases remanded to the trial court for a new trial in conformance with the conclusions reached herein.

Costs are taxed against the State.

COOPER, C. J., and FONES and HARBISON, JJ., concur.

HENRY, J., not participating.