**STATE of Tennessee, Petitioner,**

v.

**Brenda Gale COLLIER, Respondent.**

Supreme Court of Tennessee.

May 22, 1978.

Linda Ross Butts, Asst. Atty. Gen., Nashville, for petitioner; Brooks McLemore, Jr., Atty. Gen., Nashville, of counsel.

C. Frank Davis, Morristown, for respondent.

## OPINION

BROCK, Justice.

In the trial court the defendant Collier was convicted upon each of six counts charging her with unlawful possession of controlled substances with the intent to sell, five of these substances, viz., methaqualone, amobarbital, codeine, hydromorphone and amphetamine, being listed in Schedule II of the Drug Control Act and the sixth, marijuana, being listed under Schedule VI of the Drug Control Act. Punishment for the marijuana count was fixed at 11 months and 29 days imprisonment and a $1,000.00 fine; punishment for each of the five counts for possession of Schedule II drugs was set at four to nine years imprisonment and a $10,000.00 fine. All sentences were ordered to run concurrently.

Upon appeal to the Court of Criminal Appeals that court affirmed the conviction for possession of marijuana, the Schedule VI substance, and affirmed the conviction for possession of methaqualone, one of the Schedule II substances, but reversed the conviction under each of the other four counts charging Schedule II substances. It was the theory of that court that "multiple convictions under the same schedule may not" stand. We granted the State's petition for certiorari to consider this issue.

Under the authority of a search warrant, the police entered the home of the defendant and her husband on May 15, 1976, and in the bedroom found a bottle containing 26 white pills, a bottle containing 50 orange and blue pills, a bottle containing 19 gray pills and a bag of plant material. In the defendant's purse were found various bottles containing 100 yellow pills, 35 black capsules, 60 white pills, and 2 capsules marked "AFD 40." A toxicology report identified the substances found in the defendant's home and purse to be the Schedule II and VI drugs previously mentioned.

In *State v. Campbell,* Tenn., 549 S.W.2d 952 (1977), this Court analyzed in considerable detail the Drug Control Act, T.C.A., § 52–1408 et seq., and, applying the principles enunciated in *State v. Black,* Tenn., 524 S.W.2d 913 (1975); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), held that the "sale of two or more controlled substances, classified separately in the schedules of the Act, should constitute separate and distinct offenses." The instant case presents the further question whether the possession with intent to sell of two or more controlled substances classified within the same schedule of the Act constitutes separate and distinct offenses. We hold, upon the same authorities and based upon the same reasoning set out in the *Campbell* decision, that the answer to the question must be in the affirmative.

T.C.A., § 52–1432, defines the criminal offense as follows:

"(a) Except as authorized by §§ 52–1408 —52–1438, it is unlawful for any person to . . . possess with intent to . . . sell, *a controlled substance.*" (Emphasis added.)

T.C.A., § 52–1409, defines "controlled substance" as follows:

"(d) 'Controlled substance' means a drug, substance, or immediate precursor in

schedules I through VI of §§ 52–1410—52–1422 inclusive." (Emphasis added.) In our opinion, the foregoing definitions, considered in the light of the overall purpose and scheme of the Act to stamp out the traffic in dangerous drugs, indicates the legislative intent to create a separate offense for the possession of each of the controlled substances set out in Schedules I through VI of the Act. *See Gore v. United States, supra.*

This construction is consistent with the *Blockburger* rules for determining the identity of offenses, which we adopted in the *Black* and *Campbell* decisions, *supra,* which is as follows:

"Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182.

As we noted in the *Campbell* opinion, the Drug Control Act established a classification of controlled substances into different "schedules" based upon the relative potential of each substance for abuse, the degree of physical or psychological dependence its use might engender and its acceptability for medical use in treatment. T.C.A., §§ 52–1412, 52–1414, 52–1416, 52–1418 and 52–1420. Drugs within a single schedule are considered to be approximately equal in dangerousness but, as a group, they are considered to be more dangerous than the drugs listed in some of the other schedules and less dangerous than the drugs listed in still different schedules. Thus, penalties reflecting these distinctive degrees of danger vary from schedule to schedule within the Act. Nevertheless, each drug within a given schedule was placed there because it, individually, is dangerous and warranted control. For instance, drugs are required to be placed within Schedule II of the Act if the Commissioners of Mental Health and Public Health find that the substance has "high potential for abuse," has "currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions," and that "abuse of the substance may lead to severe psychic or physical dependence." T.C.A., § 52–1414.

In order to be placed within a schedule, the Act requires that each individual drug or substance be considered in light of at least eight criteria. T.C.A., § 52–1410. In our opinion, each drug in a given schedule, in effect, comprises a separate subsection in the statutory scheme, e. g., in this case, the defendant violated T.C.A., § 52–1415(a)(1)(viii); § 52–1415(a)(1)(xi); § 52–1415(d); § 52–1415(g); and § 52–1415(h).

The holding of the Court of Criminal Appeals in this case would permit a defendant found to be in possession of a variety of the severely dangerous Schedule I drugs, LSD, heroin, and mescaline, for example, to receive a less severe sentence than a defendant found to be in possession of, for example, one Schedule I drug and any combination of drugs from other schedules, since the latter would require separate convictions under *State v. Campbell, supra,* while the former would not. In our opinion, the legislature did not intend that such a result should be possible.

We note that the conclusion which we have reached has support in other jurisdictions. In Missouri, it was held in *State v. Gordon,* Mo.App., 536 S.W.2d 811 (1976), that the possession of drugs listed in different schedules of the drug control statute amounted to separate offenses and presented no double jeopardy problem, the same result reached by this Court in *State v. Campbell, supra.* The Missouri Court of Appeals was then faced, as is this Court in the instant case, with a plea for extension of that rule to permit separate convictions for offenses involving drugs listed within a single schedule of the statute. In *State v. Williams,* Mo.App., 542 S.W.2d 3 (1976), the court held that separate convictions could stand for simultaneous possession of heroin and marijuana, both Schedule I substances under the Missouri Act. The court noted

that its statute made it unlawful for "any person . . . to . . . possess . . . any controlled or counterfeit substance . . . ." The court said:

"The use of the word 'any' indicates that each separate substance possessed is an unlawful act. If the legislature had intended that the possession of several Schedule I substances would only constitute a single offense, it would have used words such as 'one or more substances' to evidence that intent." 542 S.W.2d at 5.

The same result was reached in *State v. Adams,* Del., 364 A.2d 1237 (1976) and *Melby v. State,* 70 Wis.2d 368, 234 N.W.2d 634 (1975). In the *Adams* case the defendant was convicted upon four counts involving four separate drugs. Two of the drugs, methamphetamine and methaqualone, were listed in Schedule II of the Delaware "Uniform Controlled Substances Act," Title XVI, Section 4701 et seq. The court concluded that:

" . . . the language of the statute shows that the legislature intended to apply the statutory prohibitions to individual substances, thereby creating a separate crime with respect to each forbidden substance.

\*　　\*　　\*　　\*　　\*　　\*

"Here, each count charges possession of a separate controlled substance. Proof of the identity of the item possessed is an element of the offense as contemplated by [statute]. A prima facie case is made when some credible evidence tending to prove the existence of each element of the offense has been established. (Citation omitted.) It is generally accepted that in charging a drug violation, the indictment must specify the drug involved. . . . Where possession of separate drugs is charged, while the evidence relating to possession may be the same for each charge, the evidence describing the substance and establishing its drug identity . . . would undoubtedly differ with respect to each drug charged. Hence, the totality of evidence required to prove one count would not establish all of the elements required

with respect to the other counts." 364 A.2d at 1240.

In *Melby v. State, supra,* the police seized several bottles of three different kinds of tablets and the defendant was charged and convicted separately on three counts. One of the counts involved possession of a substance under the "narcotic drug" section of the statute; the other two counts involved two drugs both of which were under the "dangerous drug" section of the statute. In upholding all three convictions, the court relied upon the same evidence test, saying:

"So, too, in the instant case, each substance is different and the illegality of each must be determined independently, without regard to the others. The two drugs involved are listed as separate prohibited substances under the definition of dangerous drugs. Had one type been analyzed and found to be of a lawful variety, that would not have made possession of the other lawful. Proof was necessary that each drug was of a type prohibited by the statute. The three different prohibited substances gives rise to three separate criminal charges, and defendant was not charged with the same crime three times." 234 N.W.2d at 641.

*See also People v. Innes,* 16 Cal.App.3d 175, 93 Cal.Rptr. 829 (1971) in which the court had before it two convictions for the sale of two drugs, LSD and mescaline, both of which were prohibited as restricted dangerous drugs under the same section of the California Health and Safety Code, Section 11912. The court upheld both convictions.

For the reasons stated, we reverse the judgment of the Court of Criminal Appeals to the extent that it reversed the judgment of the trial court. The judgment of the trial court, upon each of the six counts of the indictment, is affirmed and this cause is remanded to that court for such further proceedings as may be required. Costs are taxed against the respondent.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.