IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 2, 2011 Session

**STATE OF TENNESSEE v. ANTHONY BROWN**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-02478     Lee V. Coffee, Judge**

_____

**No. W2010-01764-CCA-R3-CD  - Filed March 30, 2012**

_____

A Shelby County jury convicted the Defendant-Appellant, Anthony Brown, of possession of 0.5 grams or more of cocaine with intent to deliver, a Class B felony, simple possession of cocaine, a Class A misdemeanor, and simple possession of marijuana, a Class A misdemeanor. The conviction for simple possession of cocaine was merged with the Class B felony, and Brown received an effective twenty-year sentence as a Range II offender. On appeal, Brown argues that (1) the evidence was insufficient to support his conviction of possession with intent to deliver, (2) the State committed prosecutorial misconduct at trial, and (3) the trial court erred in instructing the jury. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Claiborne H. Ferguson, Memphis, Tennessee for the Defendant-Appellant, Anthony Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and W. Chris Scruggs, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

    **Background.** A Shelby County grand jury indicted Brown for the possession of 0.5 grams or more of cocaine with the intent to sell, the possession of 0.5 grams or more of cocaine with the intent to deliver, and simple possession of marijuana.

At trial, Sergeant Chris Harris of the Shelby County Sheriff's Office testified that on September 11, 2008, he and other law enforcement officers were conducting a narcotics investigation in the area of Rocky Park and Kirby in Memphis, Tennessee. They were looking for Stacy Clark, from whom the officers "had made several undercover buys." As a result of these "buys," Clark was wanted on several felony warrants, and her car was "subject to seizure." Sergeant Harris saw Clark's car drive by him and fail to stop at a stop sign. He began following the car. The car made a U-turn and began traveling toward Sergeant Harris. Harris activated his lights to initiate a stop. He saw Brown driving the car. As soon as Sergeant Harris turned on his blue lights, Brown "put it in reverse and attempted to flee from [Harris] several hundred feet." Brown's flight ended when he attempted to turn the car around and ran into a curb. Sergeant Harris used his car to block the car from the front, and Detective James Pavatte, who was also involved in the narcotics investigation of Clark, blocked the car from the rear. The officers took Brown out of the car, placed him on the ground, and put handcuffs on him.

Detective Pavatte patted Brown down and found a brown paper bag in Brown's front left pocket. Inside the paper bag were two plastic bags, one containing crack cocaine and the other containing marijuana. Sergeant Harris testified that the crack cocaine and the plastic bag it was in weighed 3.91 grams. He testified, based on his experience of thirteen years as a law enforcement officer and three years with the narcotics division, that the quantity of cocaine was worth approximately $150. Sergeant Harris also said that this quantity was more than a "one time use amount." The marijuana and its bag weighed 11.1 grams, was worth between $50 and $70, and, according to Harris, was more than the amount a person would use to smoke at one time. Sergeant Harris testified that officers did not find pipes or other drug paraphernalia that a person would use to consume the drugs, either on Brown or in the car. Additionally, Brown had "somewhere over a hundred dollars on him."

On cross-examination, Sergeant Harris acknowledged that Brown was not the focus of the officers' investigation that day. He did not know where Brown was going or to whom he was going to sell or deliver the drugs.

Detective James Pavatte of the Shelby County Sheriff's Office testified consistently with Sergeant Harris's account of the events of September 11, 2008. He testified that he had been a law enforcement officer for approximately nineteen years and had been involved in narcotics investigations for twelve to thirteen years. He had been involved in undercover operations buying cocaine or crack cocaine "well over a hundred" times. Detective Pavatte testified:

> [The drugs] were packaged as though they were being delivered to someone. From my experience, usually . . . you'll find them just loose and the bags will

be separate. They'll be in their pocket, but they're usually not in a paper bag or something like that. The paper bag is a way to conceal it [when it's not in the pocket].

Detective Pavatte said that the quantity of crack cocaine would sell on the street for approximately $120 to $180. He said that the quantity, referred to as an "eight ball," was a common weight for distribution.

On cross-examination, Detective Pavatte testified that buyers commonly purchase eight balls, and the buyers, in addition to the seller, also commonly possess an eight ball. He acknowledged that he did not know to whom Brown was delivering the narcotics. Detective Pavatte further acknowledged that the drugs were likely to be delivered in the package, and that the buyer might also possess the drugs in the same package after delivery.

Special Agent Melanie Johnson of the Tennessee Bureau of Investigation testified that she analyzed the drugs found on Brown. She measured 2.5 grams of crack cocaine and 9.6 grams of marijuana, excluding the bags containing them.

Following the evidence at trial, the jury found Brown guilty of the lesser included offense of simple possession of cocaine on the charge of possession with the intent to sell. It found him guilty as charged on the remaining counts of possession of cocaine with the intent to deliver and simple possession of marijuana. Brown filed a motion for new trial, which the trial court denied. This timely appeal followed.

**I. Sufficiency of the Evidence.** Brown argues that the evidence at trial was insufficient to support the conviction for possession of more than 0.5 grams of cocaine with intent to deliver. He concedes, as he did at trial, that he possessed the drugs. However, he asserts that the State "introduced no affirmative testimony or evidence" of Brown's intent to deliver the drugs, and that the State's circumstantial evidence could not support the jury's verdict. The State responds that the evidence is sufficient to support an inference of Brown's intent to deliver and, thereby, the jury's verdict. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if

the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

When the State offers proof of guilt based on circumstantial evidence, the jury decides how much weight to give to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958) (internal quotation and citation omitted)). This court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010) (citing Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956)). We note that the standard of review "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (quoting State v. Sutton, 166 S.W.3d 686, 689 (Tenn. 2005)).

In order to convict Brown of possession of more than 0.5 grams of cocaine with the intent to deliver, the State must prove that (1) Brown knowingly possessed more than 0.5 grams of cocaine, and (2) he intended to deliver it. T.C.A. § 39-17-417(a)(4) (2006). The definition of "deliver" includes "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Id. § 39-17-402(6).

We conclude that the evidence was sufficient for a reasonable juror to find Brown guilty of possession with intent to deliver. The proof regarding intent in this case, as in most cases, was largely circumstantial. However, a jury is permitted to infer the defendant's intent based on "the amount of a controlled substance or substances possessed by an offender, along

-4-

with other relevant facts surrounding the arrest."[1] Id. § 39-17-419. Such "other relevant facts" that can give rise to an inference of intent to sell or deliver include the absence of drug paraphernalia, the presence of a large amount of cash, the packaging of the drugs, and the street value of the drugs. See State v. Belew, 348 S.W.3d 186, 191-92 (Tenn. Crim. App. 2005) (citing State v. Chearis, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) (finding sufficient evidence to support the jury's finding of intent to deliver when the defendant possessed 1.7 grams of crack cocaine, no drug paraphernalia, and 5.1 grams of baking soda); State v. Logan, 973 S.W.2d 279, 281 (Tenn. Crim. App. 1998) (finding sufficient evidence of intent to sell to support conviction when the defendant possessed a large amount of cash and several small bags of cocaine); State v. Brown, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (finding that the absence of drug paraphernalia and the manner of packaging of drugs supported an inference of intent to sell); State v. Matthews, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding that testimony concerning amount and street value of drugs was admissible to prove the defendant's intent); State v. Charles Benson, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *8 (Tenn. Crim. App., at Nashville, Oct. 8, 2004) (finding that the absence of drug paraphernalia and testimony of value and amount of 3.3 grams of cocaine sufficient for the jury to infer the defendant's intent to sell and deliver it), perm. to appeal denied (Tenn. May 23, 2005); State v. William Martin Frey, No. M2003-01996-CCA-R3-CD, 2004 WL 2266799, at *8 (Tenn. Crim. App., at Nashville, Oct. 6, 2004) (finding that testimony of 1.8 grams of cocaine, a "stack" of cash, and absence of drug paraphernalia constituted sufficient evidence to support the jury's inference of intent to sell), perm. to appeal denied (Tenn. Feb. 28, 2005)).

Here, Brown was driving a car known to belong to someone involved in the drug trade. He had in his possession 2.5 grams of crack cocaine, 9.6 grams of marijuana, and more than $100 in cash. The drugs were packaged in separate plastic bags, both of which were in a brown paper bag. According to Detective Pavatte, this manner of packaging suggested that the drugs were intended for delivery. Sergeant Harris and Detective Pavatte testified that the street value of the drugs totaled approximately $200. Harris testified that the quantity of each drug was more than that typically used at a single time. Furthermore, the officers found no pipes or other paraphernalia that would allow for the use of the drugs. Based on the amount of the drugs and the circumstances surrounding the arrest, a reasonable juror could have inferred Brown's intent to deliver the cocaine and thereby found him guilty of the offense beyond a reasonable doubt. Brown is not entitled to relief on this issue.

**II. Prosecutorial Misconduct.** Brown asserts that the State committed prosecutorial misconduct based on (1) Sergeant Harris's testimony during direct and cross-examination in

---

[1]Brown challenges the applicability of this inference in his case. As discussed below, we conclude that the inference is applicable here.

which he "repeatedly misstated the law as to what constitutes felony possession of both marijuana and cocaine," and (2) the prosecutor's similar misstatements of law during closing argument.[2] The State responds that the prosecutor committed no misconduct, and even if he did, the conduct did not affect the verdict to Brown's prejudice. We agree with the State.

In order to be entitled to relief on appeal based on prosecutorial misconduct, the defendant must "show that the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996). This court must consider the following factors when determining this issue: (1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper arguments; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength and weakness of the case. Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976). See State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984) (approving the Judge factors).

We first consider Brown's argument based on Sergeant Harris's alleged misstatements of law. In defense counsel's opening statement, he addressed the quantity of the drugs found on Brown relative to the classification of the offenses as either felonies or misdemeanors. Defense counsel said:

> The evidence will show you, ladies and gentlemen, that my client, Mr. Brown, was in possession of about 2.4, 2.5 grams of crack cocaine and about 11 grams of marijuana. About five times more marijuana th[a]n he had cocaine and yet, you'll see from the indictment that he's charged with a misdemeanor for the 11 grams of marijuana, but the State wants to charge him with a felony for the lesser amount of crack cocaine.

The State later questioned Sergeant Harris on direct examination regarding these charging decisions:

> [Prosecutor]: Do you know what the distinguishing factors between simple possession and felony possession, between simple possession and felony possession of marijuana?

---

[2]In the relevant heading, Brown's brief phrases this issue as one of trial court error for "fail[ing] to adequately correct the repeated assertion of the State and the State's witness." However, his argument focuses exclusively on prosecutorial misconduct. We therefore interpret it as a claim of prosecutorial misconduct rather than trial court error.

[Sergeant Harris]: Simple amount, this is just a few grams shy of a felony. I believe felony is [fourteen] grams.

[Defense Counsel]: Your Honor, I'm going to object to that –

The Court: [B]ased on opening arguments as to why he's charged with a felony amount of cocaine, but a misdemeanor amount of marijuana. On that basis, I will overrule the objection. . . .

. . . .

[Prosecutor]: So basically, in regards to the marijuana, the law doesn't provide for a felony or the intent to show delivery or sell, when it's an amount less than, give or take, fourteen grams.

[Sergeant Harris]: That's correct.

[Prosecutor]: So that's why you charged [him with] simple possession of marijuana?

[Sergeant Harris]: Yes. That's correct.

[Prosecutor]: Now, is the same true in regards to the cocaine?

[Sergeant Harris]: No, sir.

On cross-examination, defense counsel questioned:

[Defense Counsel]: How much weight is a felony on marijuana?

[Sergeant Harris]: It's somewhere just over fourteen grams.

[Defense Counsel]: You're saying that you believe that there's a law in Tennessee that says if you possess fourteen or 14.7 grams of marijuana, that it's an automatic felony?

[Sergeant Harris]: I don't know the exact, over fourteen grams, but yes.

. . . .

-7-

[Defense Counsel]: But in Tennessee you can sell, if you sell up to 14.175 grams of marijuana, it's still a misdemeanor.

[Sergeant Harris]: That's correct.

[Defense Counsel]: Okay. Now, if you sell over 14.175 grams, that's a felony. Right?

[Sergeant Harris]: Correct.

[Defense Counsel]: It's the selling of marijuana. Right? Not the possession, but the selling that makes it a felony.

[Sergeant Harris]: It's the amount.

[Defense Counsel]: No. The amount says that under 14, it's charged as a misdemeanor.

[Sergeant Harris]: Correct.

[Defense Counsel]: . . . If I sell you the smallest amount of cocaine, is it ever a misdemeanor?

[Sergeant Harris]: There have been cases where they have been charged with felonies and cases where they've been charged with misdemeanors on a simple cocaine charge.

[Defense Counsel]: Simple cocaine charge. Simple possession. Meaning they possessed it.

[Sergeant Harris]: If you're talking about possession, yes. If you're talking about sells [sic], you get into something different.

[Defense Counsel]: Selling is a felony. Delivering is a felony. Manufacturing is a felony.

[Sergeant Harris]: That's correct.

[Defense Counsel]: No matter what the weight is on cocaine.

[Sergeant Harris]: Correct.

. . . .

[Defense Counsel]: Okay. So it's the selling, the selling is the critical issue in cocaine and felonies?

[Sergeant Harris]: It's also the amount.

[Defense Counsel]: Where does it say that?

[Sergeant Harris]: Well, it's the intent, the possession that he has, the amount that he has, at this point, was more than what is reasonable for one person to consume and smoke.

After defense counsel continued this line of questioning and requested that Sergeant Harris find a particular provision of the relevant statutes regarding a "felony amount" of cocaine, the trial court provided the jury with the applicable law and stated:

> Tennessee law . . . mandates that it is a misdemeanor offense . . . for a person to distribute a small amount of marijuana not in excess of 14.175 grams. So under Tennessee law, any amount of marijuana that you possess or sell or possess with intent to sell or deliver, if it's less than 14.175 grams, it is a misdemeanor in the State of Tennessee. In order for it to be a felony possession of marijuana with intent to sell or deliver, it has to be more than 14.175 grams and less th[a]n ten pounds and depending on the amount, there are different degrees of offense in the State of Tennessee . . . . There are no corresponding laws in the State of Tennessee that treats [sic] cocaine the same as marijuana is treated. In Tennessee, if any amount of cocaine is sold or if a jury infers that that cocaine was possessed with intent to sell, no matter what the amount is, it is a felony offense. In this case, Mr. Brown has been charged with possession of more than 0.5 grams of cocaine with intent to sell or deliver. That is a felony offense. If it is less than 0.5 grams, it is still a felony offense, but just a different degree of felony . . . .

The record, considered under the Judge factors, does not support Brown's contention that any alleged prosecutorial misconduct affected the outcome of trial. The State's questions during direct examination, as the trial court noted in overruling the defense objection, were in response to defense counsel's opening statement. The questions were designed to elicit testimony explaining why Brown's possession of a smaller amount of

cocaine supported a felony indictment but his possession of a larger amount of marijuana supported only a misdemeanor indictment. While the questions and Sergeant Harris's responses did not provide an exhaustive explanation of the law, they did convey correctly that possession of less than approximately fourteen grams of marijuana is a misdemeanor, regardless of an intent to sell or deliver the marijuana. The questions also conveyed that possession of cocaine is treated differently under the statutes. Additionally, the trial court fully and accurately explained the applicable law in its final jury instructions. It also instructed the jury that the proper source for the governing law is the jury instructions, not comments by the attorneys and witnesses. We presume the jury followed the trial court's instructions. State v. Shaw, 37 S.W.3d 900, 904 (Tenn. 2001). As a result, the questioning did not affect the outcome of the trial to Brown's prejudice.

Regarding Sergeant Harris's responses on cross-examination, we first note that it is unclear whether Harris's answers to defense counsel's questions on cross-examination can possibly amount to prosecutorial misconduct, as Brown claims here. The State was not in control of Harris at the time he answered the questions or otherwise responsible for Harris's answers. See State v. Melvin Crump, No. M2006-02244-CCA-R3-CD, 2009 WL 723524, at *38 (Tenn. Crim. App., at Nashville, Mar. 18, 2009) (finding no prejudicial effect on the verdict based on State witness's cross-examination testimony when the prosecutor "was not involved in questioning the witness during this testimony" and when there was no indication the prosecutor was responsible for the witness's testimony), perm. to appeal denied (Tenn. Aug. 24, 2009). Furthermore, it is unclear that Sergeant Harris misstated the relevant law. He correctly testified that the quantity of controlled substance and the defendant's intent are the determinative factors for such charges. See T.C.A. § 39-17-417. Regardless, the trial court instructed the jury on the applicable law both during Sergeant Harris's cross-examination and in the final jury instructions. Again, because we presume that the jury followed the court's instructions, Shaw, 37 S.W.3d at 904, we cannot conclude that the questioning affected the outcome of trial to Brown's prejudice.

Next, Brown argues that the prosecutor misstated the law several times during closing argument, suggesting to the jury that the amount of cocaine Brown possessed alone created a presumption that Brown was guilty of possession with intent to sell or deliver. He also argues that the State "improperly characterized the purpose of the scheduling of controlled substances creating an emphasis on the dangerousness of cocaine not assigned by law." In support of these arguments, Brown references a point in closing argument when the State addressed the applicable law:

> It's his intent. That's the question you've got to answer . . . . You've got to
> figure out what he was going to do with those drugs . . . . The law presumes
> or infers that if you're possessing over half a gram of cocaine --

The defense objected at this point, and the court sustained the objection. The State continued:

> The Court advised you about inferences and it's here in the instructions too and he advises that there are inferences that you can either accept or reject based on the weight and quantity of this cocaine. . . . [W]hat I was getting at, with regard to the inference, is that if the weight alone is such an amount in combination of [sic] these other factors that I've been discussing . . . then you can find that inference that he possessed these drugs with intent to sell even though there was no actual [sale].

Later, referring to the quantity of cocaine Brown possessed and the classification as a felony, the State said:

> These things are powerful. It doesn't take a lot. That's why it's treated the way it is. That's why it only takes a half a gram to be a felony.

Defense counsel again objected, and the trial court stated to the jury:

> [T]he Court has charged you on the law in this case and again will remind you that any statements from the lawyers that are not supported by the elements, I will instruct you that you shall disregard those statements. Cocaine, possession of any amount of cocaine in Tennessee with intent to sell or deliver is a felony offense. Possession of more than half a gram of cocaine in Tennessee is a different felony offense, but it is a felony offense to possess any amount of cocaine with intent to sell in the State of Tennessee.

> Regarding the schedule of controlled substances, the State argued:

> [Defense counsel] pointed out that he had eleven grams of this marijuana and only two and a half grams of cocaine or crack cocaine. Well, the law has also set out what schedule these drugs [are], one through six or seven. Marijuana is a schedule six. It's not as serious as an offense to possess marijuana as it is cocaine. That's all that means and it's based on their danger levels. Marijuana is just not as deadly as cocaine. That's why that is. It's not as dangerous, not as addictive.

Defense counsel objected, and the trial court overruled the objection. It addressed the jury:

-11-

[S]ome drugs under Tennessee law are, should be punished more severely. I'm not going to comment on whether or not it's dangerous, but the law recognizes certain drugs should be punished more severely. Cocaine is a schedule two drug. Marijuana is a schedule six drug and that is included in the charge and a schedule two drug is punished more severely under Tennessee law th[a]n a schedule six drug is.

Considering the record under the Judge factors, we conclude that any misconduct in the State's closing argument did not affect the outcome of the trial to Brown's prejudice. Although the prosecutor presumably began to state erroneously that the possession of more than a half gram of cocaine creates an inference that Brown possessed the drugs with an intent to sell or deliver, he was interrupted by an objection before he completed the sentence and was allowed to correct himself. He immediately and correctly stated that the law allowed the jury to infer Brown's intent based on the quantity and other circumstances. Later, when the prosecutor said that the quantity of a half gram of cocaine resulted in a felony, the trial court immediately instructed the jury not only on the correct state of the law, but also that the jury must rely on the court's instructions of law rather than the attorneys' statements of law. Finally, regarding the prosecutor's characterization of the rationale underlying the scheduling of controlled substances, the prosecutor was correct to emphasize the addictive nature of the drugs and the dangers they pose to society. These are amongst the many factors that are considered in the scheduling of controlled substances. See T.C.A. 39-17-403(a) (2006) (enumerating the factors that the commissioner of health and commissioner of mental health must consider in classifying controlled substances, including the potential for abuse, the risk to public health, and the potential to create dependence); State v. Collier, 567 S.W.2d 165, 167 (Tenn. 1978) (explaining that drugs are determined to be controlled substances because they are "dangerous and warrant[] control," the degree of danger posed by a substance varies depending on its schedule, and the penalty for drugs in each schedule reflects its relative danger). In light of the minor misstatements, the prosecutor's prompt corrections, and the trial court's immediate curative instructions, we conclude that the conduct did not adversely affect the outcome of the trial. Brown is not entitled to relief on these matters.

**III.  Jury Instructions.** Brown alleges that the trial court erred in instructing the jury (1) concerning an inference of casual exchange and (2) that it could infer Brown's intent on the charge of possession with intent to deliver because the statutory language allows an inference only of intent to "sell or otherwise dispense." The State responds that the trial court properly instructed the jury because there was no evidence of an exchange that would justify instructing the jury on casual exchange and because the inference applies to an intent to deliver drugs. We agree with the State.

A defendant has a "'constitutional right to a correct and complete charge of the law.'" State v. Litton, 161 S.W.3d 447, 458 (Tenn. Crim. App. 2004) (quoting State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990)). When reviewing challenged jury instructions, we must look at "the charge as a whole in determining whether prejudicial error has been committed." In re Estate of Elam, 738 S.W.2d 169, 174 (Tenn. 1987) (citation omitted); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). "A charge should be considered prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997) (citing State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995)). Because the propriety of jury instructions is a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. State v. Smiley, 38 S.W.3d 521, 524 (Tenn. 2001).

Brown's arguments concerning the jury instructions are based on Tennessee Code Annotated section 39-17-419, which provides:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

T.C.A. § 39-17-419.

First, Brown argues that the trial court erred in failing to instruct the jury that it could infer that Brown lacked the intent to sell or deliver drugs based on circumstances indicating a casual exchange. He relies on the language of Tennessee Code Annotated section 39-17-419, which states that the "inferences shall" be charged to the jury. Additionally, Brown asserts that casual exchange of the drugs is a lesser included offense, and the trial court should have instructed the jury regarding the inference of such a lesser included offense. The State responds that the proof at trial did not support an instruction regarding the inference of casual exchange, and the trial court did not err in refusing to give such an instruction. We agree with the State.

-13-

The Tennessee Supreme Court has explained the inferences included in Tennessee Code Annotated section 39-17-419, stating:

The first sentence of [Tennessee Code Annotated section 39-17-419] deals exclusively with a situation in which controlled substances are [p]ossessed by a seller and makes no reference whatever to an actual sale. The second sentence of said subsection deals with a situation in which a small amount of a controlled substance is exchanged . . . .

The inference declared in the first sentence is for the benefit of the State, a quantity of the drug (inferentially large), together with other relevant facts surrounding the arrest, indicating the commission of the felony. The inference declared in the second sentence is for the benefit of the defendant, the small quantity of the drug, together with circumstances indicating a casual exchange among individuals, suggesting the commission of only the lesser offense of possession.

State v. Helton, 507 S.W.2d 117, 120 (Tenn. 1974). Based on the evidence presented at trial, a trial court decides whether to charge "the first sentence, the second sentence, or both." Id.

At the conclusion of the trial, the trial court instructed the jury only on the first of these inferences. Additionally, it stated:

However, the jury is not required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by all the evidence in the case warrant the inference which the law permits the jury to draw. The inference may be rebutted by direct or circumstantial evidence or both, whether it exists in the evidence of the State or is offered by the defendant. . . . The State must prove beyond a reasonable doubt every element of the offense before the defendant can be found guilty.

The court refused to instruct the jury on casual exchange and the inference a jury could draw as to Brown's intent based on a casual exchange because, according to the court, "there's no proof on the record that Mr. Brown exchanged drugs with anyone." As a result, the court ruled the inference that could be drawn from a casual exchange was inapplicable.

The record supports the trial court's refusal to instruct the jury on the inference based on a casual exchange. As an initial matter, Brown's argument that the language of the statute requires that both inferences always be charged to the jury is misplaced. Although the statute directs that the "inferences shall be transmitted to the jury," T.C.A. § 39-17-419, the

Tennessee Supreme Court has interpreted the statute such that a trial court is not required to charge the jury with both inferences anytime it charges one of them. Helton, 507 S.W.2d at 120. Rather, the statute requires an instruction on either of the inferences only when a charge on the inference is appropriate based on the evidence at trial. Id. In addition, Brown's assertion that the instruction on casual exchange was warranted because an act of casual exchange is a lesser included offense of possession with intent to sell or deliver is also unavailing. We note that, contrary to Brown's assertion, this court has ruled that casual exchange is not a lesser included offense of possession with intent to sell or deliver. State v. Nelson, 275 S.W.3d 851, 865 (Tenn. Crim. App. 2008) (citing State v. Timothy Wayne Grimes, No. M2001-01460-CCA-R3-CD, 2002 WL 31373472, at *6 (Tenn. Crim. App., at Nashville, Oct. 16, 2002)). Furthermore, the determinative inquiry in deciding to instruct the jury on the inference is not whether casual exchange is a lesser included offense but whether the evidence supports a finding of a casual exchange. Adrian K. Nelson v. State, No. M2009-02166-CCA-R3-PC, 2011 WL 208386, at *9 (Tenn. Crim. App., at Nashville, Jan. 12, 2011); Timothy Wayne Grimes, 2002 WL 31373472, at *6. Here, there was no evidence indicating that Brown exchanged the drugs with anyone. As a result, there was no evidence supporting a finding of a casual exchange, and the trial court did not err in refusing to instruct the jury regarding the inferences to be drawn from a casual exchange. The trial court's failure to instruct the jury on an inference arising from casual exchange did not mislead the jury as to the applicable law, and the instructions fairly submitted the legal issues to the jury. Brown is not entitled to relief.

Brown also asserts that the trial court erred in instructing the jury regarding an inference of an intent to deliver the controlled substances. He argues that Tennessee Code Annotated section 39-17-419 allows for an inference only of an intent to "sell[] or otherwise dispens[e]." According to Brown, the inference is therefore inapplicable to the offense of possession with intent to "deliver" and the trial court should not have instructed the jury regarding the inference in connection with this charge. The State responds that the plain language of the statute includes an inference of an intent to deliver, and the trial court properly instructed the jury. We agree with the State that the trial court did not err in instructing the jury.

At issue is the statutory interpretation of section 39-17-419. A court's "duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature." Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004) (citing Lipscomb v. Doe, 32 S.W.3d 840, 844 (Tenn. 2000)). The Tennessee Supreme Court has described the firmly established principles guiding this task:

When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced

-15-

interpretation that would limit or expand the statute's application. Where an ambiguity exists, we must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose. The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning.

Eastman Chem. Co., 151 S.W.3d at 507 (citations omitted). Additionally, courts "will not apply a particular interpretation to a statute if that interpretation would yield an absurd result." State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000) (citing State v. Legg, 9 S.W.3d 111, 116 (Tenn. 1999)).

Here, the language of Tennessee Code Annotated section 39-17-419 allows a jury to infer that the defendant possessed a controlled substance with the intent of "selling or otherwise dispensing." Tennessee Code Annotated section 39-17-402 defines the term "dispense" to mean "to deliver a controlled substance to an ultimate user or research subject by or pursuant to the lawful order of a practitioner, including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for that delivery." T.C.A. § 39-17-402(7). "Deliver" is defined to mean "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Id. § 39-17-402(6). Nevertheless, these definitions only apply "unless the context otherwise requires." Id. § 39-17-402.

Applying these definitions strictly to only the first sentence of section 39-17-419, Brown's argument has merit. The statute defines "dispense" as a more specific form of "deliver," and the inference of the defendant's criminal intent under section 39-17-419 applies only to "selling or otherwise dispensing," which would seemingly exclude the more general "deliver." However, such an interpretation ignores the remainder of section 39-17-419 and the legislative intent the entirety of the statute reveals. The second sentence of section 39-17-419 describes when a jury may infer that the defendant lacked the intent of "selling or otherwise dispensing in violation of the provisions of § 39-17-417(a)." Id. § 39-17-419 (emphasis added). Section 39-17-417(a) proscribes the knowing manufacture, delivery, or sale of a controlled substance and the possession of a controlled substance with the intent to manufacture, deliver, or sell. Id. § 39-17-417(a) (2006).

Importantly, the reference to section 39-17-417(a) indicates that the legislature intended the inferences to apply when a defendant is charged with the possessory crimes

-16-

proscribed under that section, including possession of a controlled substance with intent to deliver. Moreover, limiting the inferences' applicability to only selling and dispensing forms of delivery would result in an absurdity, as there is no reason to distinguish dispensing from other more general forms of delivery for the purposes of these inferences. As a result, the statutory definition of "dispense" does not apply to the term's usage in section 39-17-419 because the "context otherwise requires." Id. § 39-17-402. In further support of our conclusion that section 39-17-419 may apply to the charge of possession of a controlled substance with intent to deliver are the many cases in which this court has upheld a conviction on such a charge based on the application of the statutory inference. See, e.g., Chearis, 995 S.W.2d at 645; State v. Anthony James Shearer, No. W2004-01774-CCA-R3-CD, 2005 WL 1330794, at *3 (Tenn. Crim. App., at Jackson, June 6, 2005), perm. to appeal denied (Tenn. Oct. 24, 2005); Charles Benson, 2004 WL 2266801, at *8. The trial court did not err in instructing the jury, and Brown is not entitled to relief on this issue.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE

-17-