**COMMONWEALTH of Kentucky,**
**Appellant,**

v.

**Treva Lynn GRUBB, Appellee.**

No. 92–SC–603–DG.

Supreme Court of Kentucky.

Sept. 30, 1993.

**884**

Chris Gorman, Atty. Gen., Perry T. Ryan, Asst. Atty. Gen., Frankfort, for appellant.

Michael J. Curtis, Ashland, for appellee.

REYNOLDS, Justice.

The Commonwealth was granted discretionary review of the Court of Appeals' decision which reversed two of the four convictions of appellee, Treva Lynn Grubb. Grubb was found guilty of four counts of trafficking in a Schedule II controlled substance and sentenced to imprisonment for six years and three months.

Undercover police officers, at midafternoon on January 9, 1990, purchased twelve pills (Schedule II narcotics) from appellee, ten of which were Percodan and two were Dilaudid. That evening officers, pursuant to a search warrant, returned to the Grubb residence and recovered additional drugs. She was subsequently indicted and tried on several charges which included the four enumerated herein and which are the subject of appeal:

Count 2) Trafficking in Percodan, a Schedule II narcotic (sale);

Count 3) Trafficking in Dilaudid, a Schedule II narcotic (sale);

Count 4) Trafficking in Dilaudid, a Schedule II narcotic; and

Count 5) Trafficking in Percodan, a Schedule II narcotic.

The Court of Appeals reversed the conviction of Counts 3 and 5 and held the double jeopardy clause of the Kentucky Constitution forbids conviction of more than one offense when all the drugs involved are contained (listed) within the same statutory schedule of controlled substances. The issue articulated by the Court of Appeals is whether multiple sentences for drug trafficking may be imposed under the "compound consequences" prong of the *Ingram* test (arising from *Ingram v. Commonwealth,* Ky., 801 S.W.2d 321 [1990] ), when the defendant has trafficked in different named substances but which are criminalized in the same schedule (statute).

KRS 218A.060 and 218A.070 places the substances Percodan and Dilaudid in Schedule II as being of high potential for abuse. KRS 218A.140 (prior to the amendments to KRS 218A) prohibits acts relating to controlled substances and specifically states, "No person shall traffic in any controlled substance except as authorized in this chapter." KRS 218A.990 establishes the penalties for trafficking in "*a* controlled substance classified in schedules I or II...." The language of the statutes reflects that the legislature did not create a separate crime with respect to each forbidden substance contained in the same schedule. Certainly a punishment must be fixed clearly and without ambiguity and any doubt will be resolved against turning a single transaction into multiple offenses. *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

KRS Chapter 218A is titled "Controlled Substances" and proscribes the dealing and administration of drugs. The criteria for imposition of penalties does not specifically state that the penalties are intended to be additive when different substances are classified in the same controlled schedule and are involved in a single transaction.

A single sales transaction between the same principals at the same time and place which violates a single statutory provision does not justify conviction or a sentence for separate crimes, even though more than one item of a controlled substance (of the same schedule) is involved.

Said otherwise, the simultaneous unlawful possession (sale) of the same scheduled narcotic drugs giving rise to separate offenses results in fractionalizing the statute. We would soon arrive at the threshold of declaring that a single criminal transaction could be broken into multiple offenses based upon the total number of pills that were recovered, a manifestly absurd result.

The issue of simultaneous possession of more than one of the controlled substances, enumerated in the same schedule, has been considered in other jurisdictions with similar statutes. There are opinions from other jurisdictions that view possession of two different drugs at the same place and time as

constituting but a single offense. *Duncan v. State*, 274 Ind. 457, 412 N.E.2d 770 (1981); *State v. Flaherty*, 33 Or.App. 251, 576 P.2d 31 (1978); *State v. Butler*, 112 N.J.Super. 305, 271 A.2d 17 (1970); *People v. Manning*, 71 Ill.2d 132, 15 Ill.Dec. 765, 374 N.E.2d 200 (1978). Jurisdictions holding to the contrary and where it was determined, clearly, that the statute indicated that each separate substance possessed was an unlawful act, include *State v. Collier*, 567 S.W.2d 165 (Tenn.1978) and *State v. Williams*, 542 S.W.2d 3 (Mo. App.1976).

■ The appellant maintains that the analysis of the drug statutes enunciated in *Collier*, *supra*, and *Williams*, *supra*, disclosed legislative intent to create multiple offenses for the possession of each controlled substance. A decisional revelation of intent finds itself on a rocky shore by divining that the word "any" indicates a separate offense when utilized in KRS 218A.140—"any controlled substance." "Any" is a flexible word and has a diversity of meanings. 3A *Words and Phrases*, p. 53 (1956). Its meaning should be restricted by the context of the statute. Although the Commonwealth argues to the contrary, we do not think multiple offenses are clearly signified or gleaned from the word "any." To say it simply, the use of this word means that if the defendant under the required circumstances should be found in possession of any of the scheduled drugs, that she would be guilty. However, if the statute does not fix the punishment for an offense clearly and without ambiguity, any doubt will be resolved against turning a single transaction into multiple offenses. *See, Bell, supra.* The parties demonstrated argumentative skill and the Court could reach either conflicting construction, but where there is an apparent ambiguity, it should be resolved in favor of lenity. This is not done out of sympathy or a lessening of any resolve proscribing drug conduct; it is but to settle any doubts in the enforcement of punitive statutes against the imposition of multiple punishments developing from a single episode.

*Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), is clearly distinguishable in that three separate crimes committed under the auspices of a single sale of narcotics were clearly intended to be classified as separate crimes, and punishment to be imposed for each commission. Therein Gore was sentenced for separate offenses and not merely different descriptions of the same offense.

The Commonwealth would seek to expand *Kroth v. Commonwealth*, Ky., 737 S.W.2d 680 (1987), however, the conviction of Kroth did not constitute double jeopardy as his conviction stemmed from the possession with intent to sell stolen drugs and constituted a violation of two separate and distinct statutory provisions, being a violation of KRS 218A.080 and also KRS 218A.100. The enumerated differences between Schedule III and Schedule IV types of controlled substances are self-evident.

■ A more recent decision of this Court, *Ingram, supra*, made clear that it has adopted a broader view of double jeopardy. Resultantly, Section 13 of the Kentucky Constitution would permit the Commonwealth to carve out of a single criminal episode the most serious offense, but not to punish a single episode as a multiple offense. In effect that case, as this one, presents a single impulse act having no compound consequences. We have determined that it may be justifiable, as in *Kroth, supra*, to impose separate punishments for the possession of different classes (schedules) of drugs on the ground that different items clearly present different threats to society. For example, KRS 218A.990 so provides as to the attendant penalties. A single act, under circumstances not found herein, could, however, threaten compound consequences.

The opinion of the Court of Appeals is affirmed.

STEPHENS, C.J., BURKE, Special Justice, LAMBERT and SPAIN, JJ., concur.

LEIBSON, J., concurs by separate opinion.

WINTERSHEIMER, J., dissents by separate opinion.

LEIBSON, Justice, concurring.

The convictions in this case involve two kinds of pills which were both Schedule II narcotics. The Court of Appeals held, and we agree, that it was double jeopardy to punish twice for possession of (and trafficking in) narcotics in a single transaction or occurrence simply because two kinds of controlled substances were involved.

The Commonwealth admitted that the transaction involved a single criminal impulse, but claimed that, because two kinds of pills were involved, there were "compound consequences." Our Court has rejected this claim, stating this case "presents a single impulse act having no compound consequences." We have reached the only logical conclusion.

I write separately only because we have failed to overrule our previous decision in *Kroth v. Commonwealth*, Ky., 737 S.W.2d 680 (1987), wherein I dissented, which is logically indistinguishable. *Kroth* held the double jeopardy principle was not implicated where the circumstances involved a single transaction with two controlled substances from different Schedules. There is no reason to make a distinction between a double penalty for a single transaction involving Schedule II and Schedule III drugs (as in *Kroth*) and one involving two different kinds of pills both on Schedule II (as here).

No one suggests that each pill represents a new offense. Yet, it should be obvious that the offense increases in seriousness more by reason of the number of pills involved than because different kinds of pills are involved. Indeed, two kinds of pills both from Schedule II necessarily create a more serious criminal risk than where some pills are from Schedule II and some from Schedule III, because Schedule II pills are so classified because they are more dangerous (or more addictive) drugs. Yet, we have ruled that possession of (and trafficking in) two kinds of pills both from Schedule II is one offense even though it would be two offenses if one kind is from Schedule III and the other from Schedule II.

*Kroth* represents a "glaring misapplication of the double jeopardy principle." *Kroth,*

*supra* at 682, Leibson, J., dissenting. My dissent stated in pertinent part:

"There is no provision anywhere in KRS Chapter 218A, *Controlled Substances,* to the effect that the possession at the same time and place of more than one type of controlled substance constitutes multiple offenses.

. . . .

A number of other jurisdictions have considered the present double jeopardy question in cases very similar to our own, and apparently *all* have reached the opposite conclusion, holding that:

'[T]he simultaneous possession of more than one type of controlled substance, under the circumstances shown on this record, constituted a single offense, and only one sentence should have been imposed. [Citation omitted.]' "

*Id.* at 683.

I concur in the present Opinion, while further stating that we should also overrule *Kroth* because it is not significantly different from the present case.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because it is not a violation of the double jeopardy provisions of the Kentucky Constitution to convict a defendant of more than one count where the defendant sells or possesses more than one drug or controlled substance listed on the same schedule.

I believe there are two separate crimes because the two different drugs consist of separate and distinct chemical compounds. When ingested, each drug can produce different effects on the human body. There are separate dangers and consequences arising from the use of each drug. As an example, a dose of Dilaudid is more potent than an equal dose of Percodan, and unlike Percodan, Dilaudid can produce quite a different adverse effect on individuals with respiratory problems. *See* Houts et al., *Courtroom Toxicology* (1990).

KRS 505.020 provides in pertinent part that when a single course of conduct may establish the commission of more than one offense, the defendant may be prosecuted for

each such offense. The statute lists certain exemptions, but none of these apply to this situation.

The majority opinion recognizes that the issue of simultaneous possession of more than one controlled substance enumerated in the same schedule, has been considered by other jurisdictions with similar statutes and by the Federal courts. The majority chooses to base its decision on the double jeopardy analysis provided by *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990).

In view of the fact that I have dissented previously from *Ingram, supra*, I must follow a consistent pattern of disagreement with any such analysis. As noted in my dissent in *Ingram*, beginning on page 325, the majority in that case attempted to meld all the Kentucky cases dealing with the question of multiple punishment, merger of criminal activity, single criminal impulse or single criminal act under the umbrella of double jeopardy whenever more than one criminal offense is charged. As noted in my dissent in *Walden v. Commonwealth*, Ky., 805 S.W.2d 102 at 109 (1991), the majority opinion in that case altered the law of Kentucky concerning double jeopardy by confusing the legal concept underlying two different terms, specifically, subsequent prosecution and multiple punishment. This case continues in the wrong direction.

I would respectfully suggest that our neighboring State of Tennessee in *State v. Collier*, Tenn., 567 S.W.2d 165 (1978), reached the correct result when it analyzed the Tennessee statute to the effect that the legislative intent to create a separate offense for the possession of each controlled substance, as well as separate penalties, were enumerated because each drug within a given schedule was dangerous and required control. *See also, Nebraska v. Pope*, 192 Neb. 755, 224 N.W.2d 521 (1974).

Missouri, in *State v. Williams*, Mo.App., 542 S.W.2d 3 (1976), determined that separate convictions would be valid for simultaneous possession of heroin and marijuana, both of which were Schedule I narcotics on the basis of legislative intent.

Georgia, in *Tabb v. State*, 250 Ga. 317, 297 S.E.2d 227 (1982) determined that there was no violation of double jeopardy principles when it affirmed the conviction of a defendant for four counts of possession with intent to distribute drugs, three of which were Schedule II controlled substances. Again the Court relies on its interpretation of the legislative intent. *See also, Howard v. State*, 144 Ga.App. 208, 240 S.E.2d 908 (1977).

Montana in *State v. Meadors*, 177 Mont. 100, 580 P.2d 903 (1978), found no double jeopardy prohibition from a conviction for possession of two drugs prohibited on the same schedule. The wording of the Montana statute was similar to that of KRS 218A.040.

New Mexico, in *State v. Smith*, 94 N.M. 379, 610 P.2d 1208 (1980) found no double jeopardy problem in a case in which the defendant was convicted of four counts of trafficking with intent to distribute narcotic drugs all arising from one sale. There were four different substances, and the defendant claimed that the four charges merged into one.

The majority opinion has chosen a different avenue in order to address this type of situation. I cannot agree because I believe that the clear legislative intent is to provide punishment for those who sell or possess specific individual drugs regardless of the schedule which lists the drugs. In this instance, I must disagree with the majority view, and it is my opinion that the facts here amount to what might be called a single impulse but which clearly has compound consequences.

I would affirm the conviction and reverse the Court of Appeals.