RENDERED: JUNE 17, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2017-CA-1665-MR

STEVEN D. ROARK                                                    APPELLANT

v.
## APPEAL FROM KNOX CIRCUIT COURT
HONORABLE DAVID A. TAPP, SPECIAL JUDGE
ACTION NO. 15-CR-00112-003

COMMONWEALTH OF KENTUCKY                                            APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND K. THOMPSON,
JUDGES.

THOMPSON, K., JUDGE: On remand from the Kentucky Supreme Court, we

consider Steven D. Roark's arguments that the Knox Circuit Court erred in

providing two erroneous jury instructions and failing to instruct the jury regarding

a requested lesser included offense.[1]

---

[1] The Kentucky Supreme Court reversed our prior Opinion in which we held that the trial court
abused its discretion in excluding a co-defendant's plea hearing testimony where Roark
subpoenaed his co-defendant, who failed to appear at the trial, and the co-defendant stated during

The trial court erred in permitting a duplicitous instruction as to Roark's manufacturing of methamphetamine charge, resulting in a jury unanimity problem as to whether all the jurors convicted him for the same separate instance of manufacture or on different instances based on actual manufacture or possession of chemicals or equipment with intent to manufacture. The trial court also committed palpable error involving double jeopardy where Roark may have been convicted for possessing the same quantity of methamphetamine as he was convicted of manufacturing. Therefore, we reverse and remand for a new trial on those charges. However, the trial court did not err in declining to instruct the jury on facilitation to manufacture methamphetamine as this was not a lesser included offense to manufacture of methamphetamine.

On February 25, 2015, Roark and four other adults, including Tonia Couch, were in a trailer which belonged to Couch, when Trooper Taylor Mills and Trooper Jason Partin arrived to do a welfare check at the residence based upon a report that there was a possible methamphetamine lab present along with a juvenile.[2] Couch let the police in, told them no one else was present besides her

---

his plea hearing that he had manufactured the methamphetamine alone and reinstated Roark's conviction and sentence. *See Commonwealth v. Roark*, 641 S.W.3d 94 (Ky. 2021) (reversing *Roark v. Commonwealth*, No. 2017-CA-001665-MR, 2020 WL 594129 (Ky.App. Feb. 7, 2020) (unpublished)). The Court then granted a petition for rehearing allowing consideration of these remaining issues.

[2] It is well established that the active production of methamphetamine poses a danger of explosion and other potential harm to persons present nearby. *See Pate v. Commonwealth*, 243

child and friend who were with her in the living room and then consented to a search after the police heard a sound in the back of the trailer.

The police found Roark, Couch's husband, and another man in the bedroom lying on a mattress and feigning sleep. On the floor next to the mattress, the police discovered a small plastic baggie containing white powder stored in a cellophane wrapper.

In the attached bathroom, the police found a funnel with a white, powdery substance inside, a used coffee filter, and a large bag of salt. Inside the toilet they found a plastic baggie with clear liquid and a spoon. The police also found needles in the bathroom cabinet. Inside the bathroom floor vent police found a modified Mountain Dew bottle with green tubing attached, another plastic bottle which contained a clear liquid substance, and a plastic bag containing coffee filters.

The police arrested all the adults in the trailer. As no one admitted that the drugs and paraphernalia were theirs, five people, including Roark, were indicted for: (1) manufacturing methamphetamine, first offense; (2) possession of a controlled substance, first degree; (3) controlled substance endangerment to a

_____

S.W.3d 327, 331 (Ky. 2007) *as modified on denial of reh'g* (Nov. 1, 2007), *as corrected* (Jan. 23, 2008).

child, fourth degree;[3] (4) tampering with physical evidence; and (5) possession of drug paraphernalia.

Before Roark went to trial, Couch and another person pled guilty to reduced charges in exchange for truthful testimony against Roark and another defendant. A third defendant, Couch's husband, entered an open plea of guilty to all the indicted charges against his counsel's advice and stated that he acted alone in manufacturing the methamphetamine.

On May 15, 2017, Roark was jointly tried with the remaining defendant. During this trial the jury heard testimony for the Commonwealth from Trooper Mills, Trooper Partin, Jamie Hibbard of the Kentucky State Police (KSP) Lab, Detective Jason Browning of the KSP Drug Enforcement Special Investigations Unit, and Couch. The troopers testified about what they found when they searched as detailed above. Hibbard testified as to the analysis that the baggie of white powder in the bedroom was methamphetamine and the clear liquid in the plastic bottle from the vent was methamphetamine. Detective Browning testified about how people manufacturing methamphetamine acted, including that they burned their trash to conceal evidence of the manufacture of methamphetamine. He also testified as to the purpose of the items found in making methamphetamine

---

[3] Couch had custody of multiple children, but only one child was present when the police searched and discovered the contraband.

and that the plastic bottles in the bathroom vent were a one-step methamphetamine lab and a hydrogen chloride (HCl) generator.

Although there was a lot of testimony from law enforcement about the manufacture of methamphetamine, the presence of drugs and paraphernalia, and the hidden location of the lab, this testimony did not tie Roark to these things beyond his mere presence in the trailer. Only Couch's testimony connected Roark with the manufacture of methamphetamine.

Couch testified that Roark lived in the trailer with her and her husband and was in the process of moving out when they were arrested. Couch claimed Roark was staying in the master bedroom by the back door (which was where the drugs were found), while she chose to occupy a smaller bedroom to be closer to the bedroom where her children slept.

Couch testified that when the police knocked, Roark yelled from the back, "Don't open the door," but she disregarded his command, opened the door, and granted the police consent to search. Couch testified that Roark burned the trash every day. She also testified that Roark called her in May or June of 2015 and "apologized for bringing it into my house."

At the close of the Commonwealth's case, Roark moved for a directed verdict on the felony charges, which was denied except as to controlled substance

endangerment to a child, which was granted as there was no evidence that Roark knew the child was present.

Roark testified in his own defense. He testified that on the morning when the police searched, Couch's friend drove him and his co-defendant to Couch's trailer at about 8:30 or 9:00 a.m. as Couch wanted a ride to go pick up her other children. Roark explained that when they arrived via the back door they went into the back bedroom; Couch was in the back bedroom and was putting on her make-up and fixing her hair. Later, Couch left the bedroom and closed the door behind her.

Roark testified he, Couch's husband, and a third man sat down on the mattress on the floor in the bedroom and they were playing on their phones and listening to music. Roark admitted to using methamphetamine at that point.

Roark admitted he would have recognized methamphetamine manufacturing if he had seen it, but denied going into the bathroom, seeing the lab, and seeing any components of methamphetamine manufacturing except maybe salt sitting on a shelf. Roark denied having drugs on him or that the bag of methamphetamine belonged to him. Roark denied bringing any of the contraband items into the house and denied destroying or concealing anything.

Roark also denied living in the trailer. He claimed Couch moved in a couple of months after she separated from her husband, and he helped her move in

her furniture and get rid of items in the trailer left by the previous occupant. Roark admitted he stayed overnight a couple of times when he was working on this. Roark stated he did not receive mail there; instead, he lived with his mother.

Roark denied calling and apologizing to Couch. He testified she put some money on his phone account when he was in jail. Later, he called Couch because he heard she was sick. He testified that during this phone call Couch "was basically apologizing to me for me being locked up for this matter."

Roark admitted he was a drug addict and used about 1/4 gram of methamphetamine a day, every day, or every other day when he could afford it. He testified he started using methamphetamine in 2013 or 2014, recognized a lot of the components for it, and had seen recipes for making it. He also admitted he was a convicted felon.

Even though Couch's husband had already pled guilty to manufacturing the methamphetamine in the bathroom, the Commonwealth sought to convict Roark as a principal rather than an accomplice and did not request a complicity instruction. Roark objected to the manufacture of methamphetamine instruction as he believed the Commonwealth had to pick one method of manufacture or another, or else there would be a problem with jury unanimity. The trial court commented that Roark was objecting to there being an A or B in the instructions, but stated it believed that giving the unanimous instruction solved that

problem and determined the Commonwealth's proposed instructions were appropriate. Roark later presented his own proposed jury instructions in which he requested that the manufacture of methamphetamine state that Roark "acting alone or in concert with others, knowingly had in [his] possession with the intent to manufacture methamphetamine two or more chemicals and/or two or more items of equipment for the manufacture of methamphetamine."

Roark also requested an instruction for facilitation to manufacture methamphetamine as a lesser included offense of manufacturing methamphetamine. The trial court declined to give such an instruction because it determined that facilitation was not a lesser included offense. Roark did not request any other instructions for lesser included offenses, such as unlawful possession of a methamphetamine precursor.

After the jury was instructed, Roark was found guilty of manufacturing methamphetamine, possession of a controlled substance, tampering with physical evidence, and possession of drug paraphernalia. The jury recommended ten years of incarceration for the manufacturing offense, one year for possession, one year for tampering, and twelve months on the drug paraphernalia charge, to run concurrently for a total of ten-years' imprisonment. These were the minimum sentences the jury could recommend on the felony charges.

The trial court dismissed the possession of drug paraphernalia charge based on a defect in the paraphernalia instruction. The trial court sentenced Roark in accordance with these recommendations on the remaining charges to a total of ten years of incarceration.

We now consider Roark's arguments regarding errors within his jury instructions. "Alleged errors regarding jury instructions are considered questions of law that we examine under a *de novo* standard of review." *Hamilton v. CSX Transp., Inc.*, 208 S.W.3d 272, 275 (Ky.App. 2006).

Roark first argues he received a non-unanimous and unreliable verdict as to the manufacturing of methamphetamine charge because the jury could have convicted him on manufacturing in two different ways but was not required to have unanimity on either of the two methods. The relevant jury instruction reads as follows:

### INSTRUCTION NO. 2

### COUNT 1
### MANUFACTURING METHAMPHETAMINE

You will find the Defendant, Steve Roark, guilty of Manufacturing Methamphetamine under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt that in this county on or about February 25, 2015 and before the finding of the Indictment herein;

A. He knowingly manufactured methamphetamine;

OR

-9-

> B. He knowingly had in his possession with the intent to manufacture methamphetamine two or more chemicals, or two or more of the items of equipment for its manufacture.

Roark explains that certain members of the jury might have convicted him based on his manufacture of the methamphetamine that was discovered in the bathroom (the plastic bottles in the bathroom vent which were a one-step methamphetamine lab and an HCl generator), while other members of the jury might have convicted him based on his having the chemicals and equipment needed for future manufacture in the bathroom (such as the funnel, coffee filters, and bag of salt). Roark argues that the standard, general unanimity instruction the trial court gave the jury could not cure this error.

The Commonwealth argues that Roark could properly have been convicted under two alternative theories, explaining under the first theory Roark could be convicted based on "the fact that he was found in a trailer, with an active methamphetamine lab, and a bottle connected to the lab which contained methamphetamine" and under the second theory he could be convicted for "possessing two items of equipment or chemicals with intent to manufacture methamphetamine." The Commonwealth relies almost exclusively on an unpublished opinion, *Marshall v. Commonwealth*, No. 2016-SC-000302-MR, 2017 WL 3634482, at *5 (Ky. Aug. 24, 2017) (unpublished), for its assertion that it need

only establish that there was sufficient evidence to support Roark's conviction under either basis provided by the jury instructions.

"Section 7 of the Kentucky Constitution requires a unanimous verdict[.]" *Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978). A unanimous verdict is also required by statute and rule. Kentucky Revised Statutes (KRS) 29A.280(3); Kentucky Rules of Criminal Procedure (RCr) 9.82(1). "A violation of this provision may occur in several ways; however it may be stated as a general principle that a violation occurs when a verdict is returned based upon jury instructions and verdict forms that provide no assurance that all of the jurors based their finding of guilt on the same event." *Elam v. Commonwealth*, 500 S.W.3d 818, 826 (Ky. 2016).

In *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013), a mother was convicted of first-degree criminal abuse of her son, but this verdict was supported by evidence about two different fractures he received at two different times. The Court "[held] that such a scenario – a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof – violates the requirement of a unanimous verdict." *Id.* at 449.

Similarly, in *Kingrey v. Commonwealth*, 396 S.W.3d 824 (Ky. 2013) (which was decided alongside *Johnson*), the Commonwealth presented evidence

-11-

that the defendant committed the crime of use of a minor under the age of 18 in a sexual performance through certain actions at a party and the separate action of having the minor model underwear sets. The Commonwealth argued the jury instructions, which did not require the jury to specify the acts of which it found the defendant guilty, were proper because

> the jury instruction simply allowed the jury to convict [the defendant] of one crime under two theories, and his right to a unanimous verdict was not violated because sufficient evidence existed for a reasonable juror to believe that [the defendant] committed the crime of use of a minor under the age of 18 in a sexual performance as to [the victim] under both factual theories.

*Id.* at 831.

While the Court acknowledged that "[i]n the past, this Court has typically analyzed combination instructions like the one here as though they allowed the jury to find the defendant guilty under either of two theories[,]" and noted that "[t]he Commonwealth contends that this analysis applies here[,]" the Court rejected the Commonwealth's reasoning. *Id.* at 830-31 (footnote omitted). The Court explained that "it is not enough that sufficient evidence existed to support a jury finding that [the defendant] committed both criminal acts" and determined jury instructions which did not distinguish the acts violated the defendant's right to a unanimous verdict. *Id.* at 831.

-12-

The Court in *Johnson* explained the difficulty in understanding this kind of error, (which has been "referred to as the 'multiple acts' error, or . . . the 'duplicitous instruction' error[,]" as noted in *King v. Commonwealth*, 554 S.W.3d 343, 352 (Ky. 2018)), as follows:

> The biggest hurdle is in understanding that cases like this one do not present multiple theories of a crime, but instead multiple distinct crimes under a single count. Thus, unlike the case where two theories – such as two means or mental states – of a single crime are presented in an instruction, we have an instruction that includes multiple crimes but directs only one conviction. Recently, we have been allowing the latter type of conviction, though not always, saying that different crimes are simply different theories of a defendant's single offense.
>
> But that is like giving directions to a McDonald's on the east side of town to half a group of travelers, and directions to one on the west side of town to the other half, despite a rule that requires all the travelers to go to the same restaurant. Both groups arrive at *a* McDonald's, but not all the travelers are in the same place.
>
> The unanimity requirement mandates that jurors end up in the same place. When we give the kind of instruction in this case to juries, they are forced by its language to *appear* to end up in the same place in order to convict. But that appearance is illusory because we can never know whether the jurors are indeed in the same place. Such instructions make it possible that some of the jurors may vote for the first crime, and some may vote for the second, with all agreeing that the defendant committed a crime. In other words, all of the jurors end up convicting (i.e., arriving at *a* McDonald's), but some of the jurors voted for one instance of the offense (i.e.,

the east-side McDonald's) and some voted for the other (i.e., the west-side McDonald's). We have no certainty that twelve people found the defendant guilty of the same instance of the crime.

*Johnson*, 405 S.W.3d at 455. *See King*, 554 S.W.3d at 352 (explaining there is consensus among many states, which Kentucky had joined, that "juror unanimity means that jurors must agree upon the specific instance of criminal behavior committed by the defendant but they need not agree upon his means or method of committing the act or causing the prohibited result.").

This problem of the duplicitous instruction error often arises regarding sexual and similar type crimes where there are multiple criminal acts involving the same victim which occurred over a lengthy period of time. *See, e.g.*, *id.* at 351-52; *Gullett v. Commonwealth*, 514 S.W.3d 518, 529-30 (Ky. 2017); *Ruiz v. Commonwealth*, 471 S.W.3d 675, 679 (Ky. 2015); *Martin v. Commonwealth*, 456 S.W.3d 1, 6-8 (Ky. 2015). However, as *Johnson* demonstrates, it is not limited to this kind of crime.

We are not convinced, based on the overwhelming published authority, that we should consider, let alone follow, the unpublished opinion of *Marshall*, 2017 WL 3634482, at *5, which forms the basis for the Commonwealth's denial of there being any jury unanimity problem. *Marshall* relied exclusively on *Wells*, 561 S.W.2d at 88, a Kentucky Supreme Court case from 1978, for the proposition that "a verdict cannot be successfully attacked upon

-14-

the ground that the jurors could have believed either of the two theories of the case where both interpretations are supported by the evidence and the proof of either beyond a reasonable doubt constitutes the same offence" in determining that because there was evidence of both actual manufacturing of methamphetamine and possession of two or more pieces of equipment or chemicals with the intent to manufacture methamphetamine, the verdict was proper. *Wells* was consistent with our pre-*Johnson*/*Kingrey* jurisprudence which allowed unanimity from reaching separate McDonald's restaurants.

*Marshall* is an outlier and fails to discuss *Johnson*, *Kingrey*, or any of the other substantive published case law on this issue, all of which distinguish between different theories about how a single operative crime was committed as compared to allowing the jury to convict for one crime based on two or more instances of the same type of criminal activity which constituted separate crimes. Furthermore, *Marshall* does not appropriately qualify for consideration pursuant to Kentucky Rules of Civil Procedure (CR) 76.28(4)(c) because there are myriad published opinions which adequately address the general issue being considered.

Additionally, while there are no published cases discussing whether the duplicitous instruction error can arise from providing jury instructions which contain two different statutory methods by which defendants may be convicted for manufacturing methamphetamine, KRS 218A.1432(1)(a)-(b), two other

unpublished Kentucky Supreme Court cases follow the same general method of addressing the problem that a defendant does not receive a unanimous verdict if the evidence provides two bases for manufacturing: (1) completed methamphetamine manufacture; and (2) future production of manufacture.[4] Therefore, *Marshall* is not even consistent with other unpublished methamphetamine manufacturing cases.

While the Commonwealth speaks of *two theories* for one crime, it in fact confirmed that there was evidence to support *two different instances* of manufacturing methamphetamine via each statutory option, KRS 218A.1432(1)(a) and (b). Because the jury did not necessarily agree on which instance of

---

[4] In *Anderson v. Commonwealth*, No. 2014-SC-000153-MR, 2015 WL 6560442, at *3 (Ky. Oct. 29, 2015) (unpublished), the Court explained there was a duplicitous instruction error as "some jurors could have believed Appellant was guilty of manufacturing methamphetamine by making meth at Drury's on June 30, while other jurors believed Appellant was guilty of manufacturing methamphetamine only because he possessed at his home on July 1 two or more of the chemicals or items of equipment needed for making meth." In *Bauer v. Commonwealth*, No. 2012-SC-000241-MR, 2014 WL 4113110, at *4 (Ky. Aug. 21, 2014) (unpublished), the Court explained that while the appellant's "possession of the pseudoephedrine and other items with intent to manufacture merged with the actual manufacture of methamphetamine using those items to create a single offense of manufacturing methamphetamine" there could still be a "separate, second instance of the offense when [the defendant] had chemicals and equipment for the manufacture of methamphetamine in her possession *after* she and her husband had successfully manufactured and used the methamphetamine on June 23-24." The Court concluded that "[w]hen the indictment includes only one count, as it did here, then the Commonwealth should elect which instance of the offense to try, and the judge is required to limit the instruction to one of the offenses." *Id.* at *5. These cases both relied on *Johnson*. We cite these cases not as authority, but to show that continuing conduct does not appear to serve as an exception which would prevent the duplicitous instruction error from applying to the two different methods by which manufacturing of methamphetamine may take place, and to provide contrast with *Marshall*.

-16-

manufacturing methamphetamine it based its finding of guilt, its verdict cannot stand and Roark is entitled to a new trial on the charge of manufacturing methamphetamine.

To fix the problem of duplicitous instruction on remand, jury instructions need to be "tailored to reflect the evidence and require a unanimous verdict regarding a specific factual scenario[.]" *Martin*, 456 S.W.3d at 8. "[T]he instructions and verdict forms must be couched in language that eliminates any ambiguity regarding the jury's consensus." *Ruiz*, 471 S.W.3d at 678. To do this, a trial court has three options:

> (1) the jury instruction can simply identify which of the particular criminal acts included in the evidence the jury is asked to consider; (2) the verdict form can identify the particular act upon which the jury determined guilt; or (3) a special instruction, as held by some courts, informing the jury that, in order to convict, all twelve jurors must agree that the defendant committed the same act.

*King*, 554 S.W.3d at 353. *See Gullett*, 514 S.W.3d at 529-30 (providing examples of how jury instructions could be rephrased with more specificity so to eliminate the duplicitous instruction error where there were two incidents of both sodomy and sexual abuse).

Roark's second argument on appeal is that a palpable error exists since the jury may have convicted him of possessing the same methamphetamine

that he was convicted of manufacturing based on the following jury instruction that did not specify what methamphetamine he was supposed to have possessed:

**INSTRUCTION NO. 2**

**COUNT 2**
**FIRST-DEGREE POSSESSION OF A**
**CONTROLLED SUBSTANCE**

You will find the Defendant, Steve Roark, guilty of First-Degree Possession of a Controlled Substance under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about February 25, 2015 and before the finding of the Indictment herein, he had in his possession a quantity of Methamphetamine;

AND

B. That he knew the substance so possessed by him was Methamphetamine, a Schedule II Narcotic Controlled Substance.

Roark points out that in the bathroom there was a glass vial of clear liquid with white residue that tested positive for methamphetamine, and in the bedroom there was a baggie of white powder, but the jury instruction did not clarify which methamphetamine he was to have possessed.

The Commonwealth argues there was no palpable error as:

It was unmistakable that the methamphetamine in the bathroom related to the manufacture and the baggie in the bedroom related to the possession. There was proof of separate acts upon which to base [Roark's] convictions

-18-

for manufacturing methamphetamine and possession of methamphetamine.

The Commonwealth notes that if there is a double-jeopardy violation, the appropriate remedy would be for the Court to vacate or reverse the lesser included charge.

"[A]n appellant's failure to present a double-jeopardy argument to the trial court should not result in allowing a conviction that violates double jeopardy to stand." *Early v. Commonwealth*, 470 S.W.3d 729, 737 (Ky. 2015). Therefore, if we determine that a violation of double jeopardy occurred, this is a palpable error that requires reversal.

The case of *Beaty v. Commonwealth*, 125 S.W.3d 196, 213-14 (Ky. 2003), *abrogated on other grounds by Geary v. Commonwealth*, 490 S.W.3d 354, 358 (Ky. 2016), is instructive on this matter. In *Beaty*, the Court explained that an appellant could properly be convicted of both possessing methamphetamine and manufacturing methamphetamine "if the methamphetamine that he was convicted of possessing was not the same methamphetamine that he was convicted of manufacturing[,]" but the Court could not "discern from the jury's verdict . . . which quantity of methamphetamine Appellant was convicted of possessing." *Id*. at 213. In *Beaty*, it was unclear whether the conviction of possession was based upon methamphetamine in a jar, which had been part of the manufacturing process, or based on methamphetamine residue found on a piece of burnt aluminum foil, as

the jury instructions did not require the jury to make a distinction between the two possible sources for the possession conviction in its verdict; thus, reversal was required. *Id.* at 213-14. The Court suggested appropriate additional language which could be added to the jury instructions to solve this issue. *Id.* at 213. *See Johnson v. Commonwealth*, 134 S.W.3d 563, 568-69 (Ky. 2004) (reversing as "seed jars" containing methamphetamine residue were part of the manufacturing process and could not form the basis of a possession conviction on top of the manufacturing conviction).

We note, additionally, because there were two quantities of methamphetamine at issue, that this jury instruction is also problematic because it is a duplicitous instruction. That type of error "violates a defendant's right to a unanimous verdict and also touches on the right to due process, is a fundamental error that is jurisprudentially intolerable" and is thus "palpable[.]" *Johnson*, 405 S.W.3d at 457. *See Ruiz*, 471 S.W.3d at 679 (relying on *Johnson* in its reversal for an unpreserved error); *Martin*, 456 S.W.3d at 8-10 (discussing the binding precedent from *Johnson* and *Kingrey* that such an error is palpable resulting in manifest injustice).

Even if we knew definitively that the jury convicted Roark of the manufacture of methamphetamine based on Roark's having the chemicals to manufacture, we would have a unanimity problem as discussed in Roark's first

-20-

argument on appeal as we would not know whether all of the jurors convicted him based on the powdered methamphetamine rather than the liquid methamphetamine. Therefore, reversal on Roark's conviction for possession of methamphetamine is required, and he is entitled to a new trial on this charge.

Finally, Roark argues he was entitled to an instruction on facilitation to manufacturing methamphetamine as a lesser included offense to manufacturing methamphetamine. We address this issue as it may recur on retrial. However, we disagree with Roark that any error occurred in the trial court's denying his request.

"An instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998). "The fact that the evidence would support a guilty verdict on a lesser uncharged offense does not establish that it is a lesser included offense of the charged offense." *Id.*

KRS 505.020(2) states in relevant part as follows:

A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]

-21-

In *Houston*, in considering whether criminal facilitation could be a lesser included offense of trafficking in or possession of a controlled substance, the Court pointed out that the trafficking or possession offense each "require proof that *the defendant, himself*, knowingly and unlawfully *committed the charged offense*" while "[t]he offense of criminal facilitation requires proof that *someone other than the defendant committed the object offense <u>and</u> the defendant*, knowing that such person was committing or intended to commit that offense, *provided that person with the means or opportunity to do so*."  975 S.W.2d at 930 (emphasis added). The Court explained that, consequentially, facilitation could not be a lesser included offense because it required "proof of additional and completely different facts."  *Id.*

In *Roberts v. Commonwealth*, 410 S.W.3d 606, 608-10 (Ky. 2013), the Court followed *Houston* in holding that criminal facilitation was not a lesser included offense of manufacturing methamphetamine, because it likewise required proof of additional and completely different facts.  The Court concluded that because criminal facilitation was not a lesser included offense of manufacturing methamphetamine, such an instruction was not required.  *Id.* at 610.

Therefore, the trial court did not err in failing to instruct the jury on criminal facilitation to commit manufacturing of methamphetamine.

Accordingly, we reverse and remand the Knox Circuit Court's judgment insofar as Roark is entitled to receive a new trial on the charges of manufacturing methamphetamine and possession of methamphetamine based on the unanimous verdict and double-jeopardy issues. As Roark did not challenge his conviction for tampering with physical evidence, that conviction remains.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Shannon Dupree
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky
(former)

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky